UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARRETT BUSINESS SERVICES, INC.,<br><br>               Plaintiff,<br><br>   v.<br><br>CHARLES COLMENERO and JANE DOE COLMENERO, and the marital community comprised thereof; and SANTIAGO ALEJO and JANE DOE ALEJO, and the marital community comprised thereof,<br><br>               Defendants. | NO. 1:22-CV-3122-TOR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

BEFORE THE COURT is Plaintiff's Motion for Temporary Restraining Order (ECF No. 8). This matter was submitted for consideration with oral argument on October 18, 2022. Suzanne K. Michael and Dean Pettita appeared on behalf of Plaintiff. Justo G. Gonzalez and Lance A. Pelletier appeared on behalf of Defendants. The Court has reviewed the record and files herein, and is fully

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 1

informed. For the reasons discussed below, Plaintiff's Motion for Temporary Restraining Order (ECF No. 8) is **denied**.

## BACKGROUND

This case arises out of Defendants' alleged misappropriation of Plaintiff's trade secrets. On September 15, 2022, Plaintiff filed the complaint against Defendants alleging the following cause of action: (1) breach of contract, (2) violation of Washington Trade Secrets Act, RCW 19.108.010(4), (3) violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b), and (4) tortious interference with contractual relations. ECF No. 1 at 6-12, ¶¶ 4.1-4.5.

On October 6, 2022, Plaintiff filed the present motion for temporary restraining order seeking to enjoin Defendants from soliciting former and/or putative clients and workers and requesting the return of all misappropriated confidential business information. ECF No. 8. Except where noted, the following facts are not in dispute.

Plaintiff is a leading human resources management company that contracts with small and medium-sized businesses to provide comprehensive human resources management solutions, including temporary staffing and professional employer organization services. ECF No. 1 at 3, ¶ 3.1. Charles Colmenero began working for Plaintiff as an Area Manager in Hermiston, Oregon in April 2014. *Id.*,

¶ 3.2.  Santiago Alejo began working for Plaintiff as a recruitment specialist in July 2015.  *Id.*, ¶ 3.3.

In connection with their employment, Colmenero and Alejo were provided with and access to confidential, proprietary, and trade secret information belonging to Plaintiff.  *Id.* at 4, ¶ 3.4.  Colmenero received the Employee Handbook and signed the acknowledgment on April 25, 2014.  *Id.*, ¶ 3.5.  Alejo received the Employee Handbook and signed the acknowledgement on July 17, 2015.  *Id.*  When they signed the acknowledgement/receipt, they confirmed that they agreed that:

> I am aware that during the course of my employment confidential information will be made available to me, for instance, product designs, marketing strategies, customer lists, pricing policies and other related information. I understand that this information is proprietary and critical to the success of BBSI and must not be given out or used outside of BBSI's premises or with non-BBSI employees. In the event of termination, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company.

*Id.*

Colmenero and Alejo also received Barrett Business Services, Inc. Code of Business Conduct and the Acknowledgement and Confirmation of Receipt of the BBSI Code of Business Conduct on April 25, 2014 and July 17, 2015 respectively.  *Id.*, ¶ 3.6.  They agreed that they would: "Avoid conflicts of interest where possible and disclose and handle ethically any conflicts that do arise [and] Protect Barrett's

confidential and proprietary information and that of our customers and vendors." *Id.*, at 4-5, ¶ 3.6.

Additionally, the Employee Handbook contained policies regarding non-solicitation and policies governing employees' access to Plaintiff's trade secrets and other confidential and proprietary information: "Each employee has the duty to respect and protect the confidentiality of all such information, whether belonging to Barrett or others with which Barrett does business, and not to use that information for personal advantage." *Id.* at 5, ¶ 3.7.  3.8.  In addition to maintaining policies set forth above and requiring employees to acknowledge receipt of the code of conduct, the Plaintiff maintained rigorous information technology security protocols, include requiring usernames and passwords for employees, and allowing various levels of access to sensitive information depending upon position.  *Id.*, ¶ 3.8.

On July 13, 2022, Colmenero ceased his employment with Plaintiff.  *Id.*, ¶ 3.09.  On July 8, 2022, Alejo ceased his employment with Plaintiff.  *Id.*, ¶ 3.10.

By August 2022, Plaintiff learned that Colmenero and Alejo had established a competing business, Repsel Associates, Inc. d/b/a Personna Employer Services while working for Plaintiff.  *Id.* at 6, ¶ 3.11.  Upon discovery of the information that they had established this competing company while working for Plaintiff and while subject to the various obligations to which they had agreed, Plaintiff

subsequently discovered that the Defendants were approaching Plaintiff's customers and soliciting their business in direct violation of the various agreements and covenants imposed by law and contract. *Id.*, ¶ 3.12. Plaintiff also obtained information that the Defendants were directly competing with the Plaintiff and in fact soliciting and obtaining Plaintiff's customers by using Plaintiff's confidential and proprietary lists, processes, strategies, and pricing information. *Id.*, ¶ 3.13.

## DISCUSSION

### I.    Subject Matter Jurisdiction

As an initial matter, Defendants challenge Plaintiff's assertion of subject matter jurisdiction. ECF No. 15 at 8-9.

[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the Defend Trade Secrets Act ("DTSA"), Congress vested federal courts with original jurisdiction over civil cases involving the misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The interstate commerce element is a jurisdictional requirement. *United States v. Agrawal*, 726 F.3d 235, 244-45 (2d Cir. 2013); *see also* H.R. Rep. No. 114-529, at 9 (2016) ("This *jurisdictional* nexus to interstate or foreign commerce…") (emphasis added).

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 5

Defendants assert the complaint only focuses on the competition in the greater Yakima Valley within Washington State. ECF No. 15 at 9. However, the complaint also alleges one of the Defendants, Mr. Colmenero, was Plaintiff's Area Manager in Oregon and that Defendants worked with clients in Washington and Oregon. ECF Nos. 1 at 3; at 8 at 6, 17 at 2. The allegation that Mr. Colmenero worked for Plaintiff in both Oregon and Washington is sufficient to allege trade secrets related to a service used in, or intended for use in interstate commerce. 18 U.S.C. § 1836(b)(1). Therefore, the Court finds subject matter jurisdiction exists pursuant to the DTSA federal question. 28 U.S.C. § 1331.

**II.    Temporary Restraining Order**

Pursuant to Federal Rule of Civil Procedure 65, a district court may grant a TRO in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A).[1] The analysis for granting a temporary restraining order is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). It "is an

---

[1]    Plaintiff moved for a temporary restraining order but provided Defendant notice who appeared and argued on this matter. Thus, this matter may more be appropriately classified as a preliminary injunction under Fed. R. Civ. P. 65(a). As the standard is the same, the classification is not dispositive for this motion.

extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To obtain this relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that a balancing of the hardships weighs in plaintiff's favor; and (4) that a preliminary injunction will advance the public interest. *Winter*, 555 U.S. at 20; *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). Under the *Winter* test, a plaintiff must satisfy each element for injunctive relief.

Alternatively, the Ninth Circuit also permits a "sliding scale" approach under which an injunction may be issued if there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," assuming the plaintiff also satisfies the two other *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of one element may offset a weaker showing of another."). "[T]he district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986). In the same vein, the court's factual findings and legal conclusions are "not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The moving party bears the burden of

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 7

persuasion and must make a clear showing of entitlement to relief. *Winter*, 555 U.S. at 22.

    A.  *Likelihood of Success on the Merits*

Plaintiff argues that it is "likely to succeed on the merits of the underlying claims." ECF No. 8 at 10. The Court notes Plaintiff did not brief the merits of its causes of action but summarily concludes it has "produced evidence tending to show that Colmenero and Alejo have unfairly solicited clients and workers and have misappropriated trade secrets from [Plaintiff]." *Id.* Plaintiff alleges breach of contract, trade secret misappropriation in violation of state and federal law, and tortious interference with contractual relations. ECF No. 1 at 6-12, ¶¶ 4.1-4.5.

    1.  <u>Breach of Contract</u>

In a breach of contract action under Washington law, the plaintiff must show (1) the existence of a valid contract, (2) breach of the contract, and (3) resulting damages. *Lehrer v. State, Dep't of Social & Health Servs.*, 101 Wash. App. 509, 516 (2000). Whether a signed employee handbook or code of business conduct forms a valid contract is a question of fact. *See Swanson v. Liquid Air Corp.*, 118 Wash. 2d 512, 520-526 (1992); *Quedado v. Boeing Co.*, 168 Wash. App. 363, 370-375 (2012).

Here, Plaintiff asserts the signed copies of Defendants' employment agreements are "missing" but that both files "would have signed a non-solicitation

agreement as part of their onboarding package, as BBSI makes this a habit." ECF No. 9 at 8, ¶¶ 17, 18. Plaintiff instead proffers Defendants' signed acknowledgement and confirmation of receipt of the employee handbook and code of business conduct, which Plaintiff asserts includes "BBSI's binding trade secret and non-solicitation policies." *Id.* at 5, ¶ 11. The Employee Handbook states that it is "an important document intended to help [the employee] become acquainted with BBSI. This Handbook will serve as a guide; it is not the final word in all cases…. Because the general business atmosphere of the Company and economic conditions are always changing, the contents of this handbook any be changed at any time at the discretion of the Company." ECF No. 9 at 52.

With significant questions whether an enforceable contract exists based on the signed employee handbooks or codes of business conduct, the Court finds that Plaintiff has not shown a likelihood of success on the merits of the breach of contract claim at this time. *See Swanson*, 118 Wash. 2d at 520-526.

2. Washington's Trade Secrets Act

The Washington Uniform Trade Secrets Act ("UTSA") codified the principles of common law trade secret protection and allows plaintiffs to receive damages for misappropriation of trade secrets. *Ed Nowogroski Ins., Inc. v. Rucker*,

137 Wash. 2d 427, 438 (1999) (citations omitted); RCW 19.108.030.  The UTSA defines trade secrets as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4)(a)-(b).  Whether the specific information in question is a trade secret is an issue of fact.  *Ed Nowogroski Ins., Inc.*, 137 Wash. 2d at 436 (citation omitted).

A plaintiff seeking a claim under the UTSA bears the burden of proving that legally protectable secrets exist.  *Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 49 (1987) (citation omitted).  Therefore, "a party must establish (1) that the information derives independent economic value from not being generally known or readily ascertainable to others who can obtain economic value from knowledge of its use and (2) that reasonable efforts have been taken to maintain the secrecy of the information." *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810, 823 (2018).  However, the plaintiff is not required to prove every element of information qualifies as a trade secret "since trade secrets frequently contain

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 10

elements that by themselves may be in the public domain but together qualify as trade secrets." *Boeing Co.*, 108 Wash. 2d at 50 (citations omitted).

      i.  *Independent Economic Value*

  One key factor courts consider in determining whether information has "independent economic value" is the effort and expense that was used to develop the information. *Ed Nowogroski Ins., Inc.*, 137 Wash. 2d at 438; *see also Lyft, Inc. v. City of Seattle*, 190 Wash. 2d 769, 782 (2018). Courts also consider the "novelty and uniqueness" of the information. *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wash. App. 412, 425 (2009) (quotations and citation omitted). "To be novel, the information must not be readily ascertainable from another source." *Inteum Co., LLC v. Nat'l Univ. of Singapore*, 371 F. Supp. 3d 864, 877 (W.D. Wash. 2019) (quotations and citations omitted). Through affidavits and declarations, plaintiffs must provide "specific, concrete examples illustrating that the . . . information meets the requirements for a trade secret." *Modumetal, Inc.*, 4 Wash. App. 2d at 824 (quotation and citation omitted).

  In the motion, Plaintiff summarily asserts the following trade secrets: temporary worker management techniques, marketing and sales strategies, recruitment and compensation practices, pricing, deal terms, and more. ECF No. 8 at 2. Plaintiff also alleges it has confidential client contact information. *Id.* at 5.

  Defendants disputes Plaintiff has trade secrets. As to the client identities,

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER ~ 11

Defendant asserts that the identities of potential Yakima-based employers requiring temporary staffing solutions are obvious, readily available on Google, and known to all industry participants. ECF No. 15 at 10. Indeed, Defendant points out that many of Plaintiff's client identities are disclosed on Plaintiff's website in the form of rotating testimonial client reviews. *Id.* As to the gross margins and pricing information, Defendant asserts that Plaintiff has no pricing model, software, or formulas, but rather has a gross markup for which Plaintiff provides zero corporate guidance. ECF No. 15 at 11. The margins are available on Plaintiff's public financial filings as a public company. *Id.* In reply, Plaintiff asserts the client identities are known only to those with specific knowledge of a client's desired start dates, work locations, and standard rates of pay. ECF No. 21 at 3. Plaintiff also asserts the temporary worker lists are trade secrets because they contain contact information and jobs worked by temporary workers who have expressed interest in specific work areas, have undergone initial onboarding, and have passed background checks. *Id.*

      Considering the parties' arguments, Plaintiff failed to provide concrete examples to illustrate how these alleged trade secrets are either not readily ascertainable from another source nor does Plaintiff provide specific, concrete examples illustrating that this information otherwise meets the requirements for a trade secret. Washington courts consistently reject hypothetical competitive

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 12

advantage arguments as "speculative and conclusory" where a party fails to identify how its information is materially different from its competitors.  *See, e.g., Robbins, Geller, Rudman & Dowd, LLP v. State*, 179 Wash. App. 711, 724 (2014) (rejecting a law firm's argument that its fee schedule and insurance information were trade secrets because they were specific to each client and took substantial time and effort to compile).  Weighing Plaintiff's speculative and conclusory allegations with Defendant's proffer that the information is publicly available, the Court finds Plaintiff has not met its burden under Washington law to prove the information at issue derives independent economic value to qualify as a trade secret.

          *ii.*    *Reasonable Attempts to Preserve Trade Secrets*

A plaintiff must also establish that reasonable efforts have been taken to maintain or protect the secrecy of information at issue.  *Modumetal, Inc.*, 4 Wash. App. 2d at 823.  Here, Plaintiff provided sufficient evidence that it has policies and procedures to protect proprietary information, including security protocols, usernames, unique passwords, and policies and procedures in the handbook and code of conduct classifying information as confidential.  *See, e.g.*, ECF No. 9 at 20.

However, because Plaintiff failed to establish that its information derives independent economic value, at this time the Court cannot find the information constitutes trade secrets under Washington's UTSA.  Therefore, Plaintiff failed to

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 13

demonstrate a likelihood of success on the merits of the UTSA claim.

3. Defend Trade Secrets Act

The Defend Trade Secrets Act ("DTSA") authorizes private civil actions for misappropriation of trade secrets that are related to a product or service used in, or intended for use in, interstate commerce. 18 U.S.C. § 1836(b)(1). The relevant portions of the DTSA are almost identical to those in Washington's UTSA. *Compare* 18 U.S.C. § 1839 *with* RCW 19.108.010; *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019). The same evidence used to establish liability under Washington's UTSA will also establish liability under the DTSA. *See, e.g.*, *id.* at 1178; *Earthbound Corp. v. MiTek USA, Inc.*, No. C16-1150 RSM, 2016 WL 4418013, at *10 (W.D. Wash. Aug. 19, 2016).

Because the Court finds Plaintiff has not established liability under Washington's UTSA, it likewise finds Plaintiff does not demonstrate a likelihood of success on the merits of the DTSA claim.

4. Tortious Interference with Business Relationships

In a tortious interference claim under Washington law, plaintiff must show "(1) the existence of a valid … business expectancy; (2) that defendants had knowledge of that [expectancy]; (3) an intentional interference inducing or causing a breach or termination of the … expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Life*

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 14

1  *Designs Ranch, Inc. v. Sommer*, 191 Wash. App. 320, 337 (2015).  The claims

2  need specific evidentiary support; for example, in *Life Designs Ranch*, the court

3  found the plaintiff's conclusory claim of harm to reputation lacked evidentiary

4  support where "[n]o client, potential client, or referral source submitted an affidavit

5  establishing they can no longer trust [plaintiff] or did not choose [plaintiff's]

6  designs because of [defendant's] website." *Id.*

7  Here, Plaintiff offers no facts or analysis in support of its tortious

8  interference claim.  ECF No. 8.  As a result, the record does not contain specific

9  evidentiary support to show damage to any business expectancy, such as a client

10  affidavit.  *Life Designs Ranch*, 191 Wash. App. at 338.  Therefore, Plaintiff has not

11  demonstrated a likelihood of success on the merits of this claim.

12  B.  Likelihood of Irreparable Injury

13  Plaintiff argues that it has incurred and will continue to incur significant

14  irreparable harm as Defendants will continue to use Plaintiff's confidential

15  business information to solicit Plaintiff's clients and workers to join their new

16  company as Plaintiff's competitor.  ECF No. 8 at 8.

17  "Irreparable harm is traditionally defined as harm for which there is no

18  adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal.*

19  *v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  "[I]ntangible injuries, such as

20  damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER ~ 15

*Rent-A-Car, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Deprivation of products that are unique or are not easily replaced may constitute irreparable harm. *Eastman Kodak Co. v. Collins Ink Corp.*, 821 F. Supp. 2d 582, 588 (W.D.N.Y. 2011). Finally, the threat of being driven out of business is sufficient to establish irreparable harm. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). Under any theory of irreparable harm, the plaintiff must use provide evidence more than conclusory or speculative statements to support its claims. *Id.* at 1473.

While Plaintiff alleges intangible injuries to support its claim for irreparable injury, the Court finds the claims are not supported with evidence beyond conclusory or speculative assertions. ECF No. 9 at 6-10, ¶¶ 12, 16, 20. In contrast to Plaintiff's speculation, Defendants provided affidavits that no clients were solicited by Defendants: Rather, clients reached out to Defendants for quotes and asked Plaintiff whether the rates could be beat. *See* ECF Nos. 17 at 17, ¶¶ 42-46; 18 at 8, ¶¶ 17-19; 19 at 2-3, ¶¶ 2-5. Outside of the speculative intangible injuries, the service at issue is not unique, appears to be easily replaceable, and Plaintiff does not allege that it is under threat of going out of business. Thus, Plaintiff has not clearly demonstrated irreparable harm.

//

//

*C. Public Interest and Balance of the Equities*

As the record does not support a finding that Plaintiff is likely to succeed on the merits of its claims nor is it likely to suffer irreparable harm, the Court need not address the balancing of equities or public interest. *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiff's Motion for Temporary Restraining Order (ECF No. 8) is

**DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED October 19, 2022.



THOMAS O. RICE
United States District Judge