UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARRETT BUSINESS SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHARLES COLMENERO and JANE DOE COLMENERO, and the marital community comprised thereof; and SANTIAGO ALEJO and JANE DOE ALEJO, and the marital community comprised thereof, <br><br> Defendants. | NO. 1:22-CV-3122-TOR <br><br> ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

BEFORE THE COURT is Defendants' Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6). ECF No. 24. This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Defendants' Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (ECF No. 24) is **denied**.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 1

## BACKGROUND

This case arises out of Defendants' alleged misappropriation of Plaintiff's trade secrets. On September 15, 2022, Plaintiff filed a complaint against Defendants alleging the following cause of action: (1) breach of contract, (2) violation of Washington Trade Secrets Act, RCW 19.108.010(4), (3) violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b), and (4) tortious interference with contractual relations. ECF No. 1 at 6-12, ¶¶ 4.1-4.5.

On October 19, 2022, the Court denied Plaintiff's Motion for Temporary Restraining Order. ECF No. 23. On October 27, 2022, Defendants filed the present Joint Motion. ECF No. 24. Plaintiff filed a response, as well as an Amended Complaint, which raises additional causes of action in addition to the original claims. ECF Nos. 27, 29. Defendants filed a reply that addresses the Amended Complaint. ECF No. 33. The following facts are drawn from the operative Amended Complaint, which are accepted as true for the purposes of the present motion. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

Plaintiff is a leading human resources management company that contracts with small and medium-sized businesses to provide comprehensive human resources management solutions, including temporary staffing and professional employer organization services. ECF No. 27 at 3, ¶ 3.1. Plaintiff generates confidential information, including management techniques, client contacts,

contract terms, sales pipeline, client relationship management techniques, pricing and costing, and worker recruitment strategies. *Id.*, ¶ 3.2. Plaintiff learned each client's temporary worker requirements, name and contact information, and tailored pricing and contract terms. *Id.* Plaintiff never reveals specific client contacts, rate agreements, or service needs. *Id.* at 4, ¶ 3.3.

Charles Colmenero began working for Plaintiff as an Area Manager in Hermiston, Oregon in April 2014. *Id.*, ¶ 3.43. Santiago Alejo began working for Plaintiff as a recruitment specialist in July 2015. *Id.*, ¶ 3.5. In connection with their employment, Colmenero and Alejo were provided with access to confidential, proprietary, and trade secret information belonging to Plaintiff. *Id.*, ¶ 3.6. Colmenero received the Employee Handbook and signed the acknowledgment on April 25, 2014. *Id.* at 5, ¶ 3.7. Alejo received the Employee Handbook and signed the acknowledgement on July 17, 2015. *Id.* When they signed the acknowledgement/receipt, they confirmed that they agreed that:

> I am aware that during the course of my employment confidential information will be made available to me, for instance, product designs, marketing strategies, customer lists, pricing policies and other related information. I understand that this information is proprietary and critical to the success of BBSI and must not be given out or used outside of BBSI's premises or with non-BBSI employees. In the event of termination, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company.

*Id.*

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 3

Colmenero and Alejo also received Barrett Business Services, Inc. Code of Business Conduct and the Acknowledgement and Confirmation of Receipt of the BBSI Code of Business Conduct on April 25, 2014 and July 17, 2015 respectively. *Id.*, ¶ 3.8. They agreed to: "Avoid conflicts of interest where possible and disclose and handle ethically any conflicts that do arise [and] Protect Barrett's confidential and proprietary information and that of our customers and vendors." *Id.*, ¶ 3.8.

Additionally, the Employee Handbook contained policies regarding non-solicitation and policies governing employees' access to Plaintiff's trade secrets and other confidential and proprietary information: "Each employee has the duty to respect and protect the confidentiality of all such information, whether belonging to Barrett or others with which Barrett does business, and not to use that information for personal advantage." *Id.* at 6, ¶¶ 3.9, 3.10. Plaintiff maintained rigorous information technology security protocols, include requiring usernames and passwords for employees, and allowing various levels of access to sensitive information depending upon position. *Id.*, ¶ 3.11. Plaintiff specifically protected the confidentiality of information regarding customer needs, pricing information, worker availability, and past contractual terms. *Id.*, ¶ 3.12.

Once onboarded, Colmenero and Alejo recruited temporary workers for placement with Plaintiff's clients and were given access to confidential business

information, including temporary worker management techniques, marketing and sales strategies, compensations practices, pricing, and deal terms. *Id.* at 7, ¶ 3.13.

On June 1, 2022, while still employed with Plaintiff, Alejo created a Facebook group called "Yakima Valley Jobs" to recruit temporary workers. *Id.*, ¶ 3.14. Alejo initially posted his personal phone number for contact information with no reference to Plaintiff and later posted with Personna branding. *Id.*

On July 8, 2022, Alejo ceased his employment with Plaintiff after giving two-weeks' notice. *Id.*, ¶ 3.16. During Alejo's notice period, Alejo discussed his plans for a new job with another employee, telling the employee that she would "see" and that "it'll be really funny." *Id.*, ¶ 3.17. This employee later tried to follow up with a high-profile client mysteriously fizzled out, and Alejo refused to give the client phone number, not wanting any Plaintiff employees to reach out to clients Alejo handled. *Id.* at 8, ¶ 3.18.

On July 13, 2022, after discovering Colmenero was a named owner of a firm that provided staffing and human resources services to Plaintiff while Colmenero was still employed, Plaintiff confronted Colmenero about the conflict of interest in violation of the Handbook and Code of Business ethics. *Id.*, ¶ 3.20. Colmenero responded by resigning that same day. *Id.*, ¶¶ 3.15, 3.20.

By August 2022, Plaintiff learned that Colmenero and Alejo had established a competing business, Repsel Associates, Inc. d/b/a Personna Employer Services

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 5

while working for Plaintiff. *Id.*, ¶ 3.21. Plaintiff subsequently discovered Defendants were approaching Plaintiff's customers and soliciting their business in direct violation of the various agreements and covenants imposed by law and contract. *Id.* at 8–9, ¶ 3.22.

Plaintiff discovered Defendants were quickly usurping Plaintiff by using Plaintiff's own trade secrets. *Id.*, ¶ 3.23. Plaintiff learned Colmenero and Alejo stole another employee's book of business and destroyed their own personnel files after they quit. *Id.*, ¶¶ 3.24, 3.25. Colmenero and Alejo immediately began using this information to solicit Plaintiff's clients by pretending to work for Plaintiff and using Plaintiff's confidential information such as staffing needs and confidential rate agreement. *Id.*, ¶ 3.27. Colmenero and Alejo used information to offer a client a lower rate on the same terms, which they could not have done without Plaintiff's confidential information. *Id.* at 10, ¶¶ 3.28, 3.29. Plaintiff was forced to match the lower rate, losing income in the process. *Id.* at 11, ¶ 3.31. As a result, Plaintiff continues to work at a discount, losing the value confidential information it spent years developing. *Id.*, ¶ 3.32.

## DISCUSSION

### I.    Amended Complaint

Plaintiff filed an Amended Complaint within 21 days of Defendants' motion. ECF No. 27. A party may amend a pleading "once as a matter of course within …

21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1)(B). As a result, the Amended Complaint supersedes the original. *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). However, Defendants contend the motion's arguments are applicable to the Amended Complaint. ECF No. 33. Therefore, the Court will address the arguments in light of the factual allegations in the operative Amended Complaint.

## II. Subject Matter Jurisdiction

Defendants challenge Plaintiff's assertion of subject matter jurisdiction. ECF No. 33 at 11. As stated in the Court's prior order, the Court finds subject matter jurisdiction exists pursuant to the Defend Trade Secrets Act ("DTSA") federal question. 28 U.S.C. § 1331. ECF No. 23. Like the original Complaint, the allegations in the Amended Complaint re-plead connections in both Washington and Oregon sufficient to establish trade secret activities in interstate commerce for purposes of the DTSA, 18 U.S.C. § 1836(b)(1). ECF No. 27.

## III. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff" the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences … to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

When deciding, the Court's review is limited to the complaint, documents incorporated into the complaint by reference, and judicial notice. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

### A. Breach of Contract

Defendants move to dismiss Plaintiff's breach of contract claims on the grounds Plaintiff fails to plead facts showing a valid, enforceable agreement. ECF No. 24.

In a breach of contract action, the plaintiff must show (1) the existence of a valid contract, (2) breach of the contract, and (3) resulting damages. *Lehrer v. State, Dep't of Social & Health Servs.*, 101 Wash. App. 509, 516 (2000). Whether a signed employee handbook or code of business conduct forms a valid contract is a question of fact. *See Swanson v. Liquid Air Corp.*, 118 Wash. 2d 512, 520-526 (1992); *Quedado v. Boeing Co.*, 168 Wash. App. 363, 370-375 (2012).

Plaintiffs assert Colmenero and Alejo signed enforceable contracts, including the employee handbook and code of business conduct, receiving consideration in the form of employment. ECF No. 27 at 11, ¶ 4.1.b. Plaintiff alleges these Defendants breached the agreements by utilizing confidential and proprietary information such as confidential pricing data, worker lists, and contract terms to solicit Plaintiff's clients, which caused Plaintiff concrete harm by forcing Plaintiff to lower its prices. *Id.*, ¶¶ 4.1.c –4.1.e. While the Court previously found there were significant questions to whether an enforceable contract exists for purposes of a temporary restraining order, the Court finds the Amended Complaint states sufficient factual matter, accepted as true, to state a claim to relief for breach of contract that is plausible on its face. *Iqbal*, 556 U.S. at 678.

**B. Trade Secrets**

Defendants move to dismiss Plaintiff's federal and state trade secret claims on the grounds Plaintiff fails to allege any plausible trade secrets with specificity, fails to plead it made reasonable efforts to maintain secrecy, and fails to identify how the secrets were misappropriated. ECF No. 24 at 10–12.

The DTSA authorizes private civil actions for misappropriation of trade secrets that are related to a product or service used in, or intended for use in, interstate commerce. 18 U.S.C. § 1836(b)(1). The relevant portions of the DTSA are almost identical to those in Washington's Uniform Trade Secrets Act

1  ("UTSA"). *Compare* 18 U.S.C. § 1839 *with* RCW 19.108.010; *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019). The same evidence used to establish liability under Washington's UTSA will also establish liability under the DTSA. *See id.* at 1178.

Washington's UTSA codified the principles of common law trade secret protection and allows plaintiffs to receive damages for misappropriation of trade secrets. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 438 (1999) (citations omitted); RCW 19.108.030. The UTSA defines trade secrets as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4)(a)-(b). Whether the specific information in question is a trade secret is an issue of fact. *Ed Nowogroski Ins., Inc.*, 137 Wash. 2d at 436 (citation omitted).

A plaintiff seeking a claim under the UTSA bears the burden of proving that legally protectable secrets exist. *Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 49 (1987) (citation omitted). Therefore, "a party must establish (1) that the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 10

1  information derives independent economic value from not being generally known
2  or readily ascertainable to others who can obtain economic value from knowledge
3  of its use and (2) that reasonable efforts have been taken to maintain the secrecy of
4  the information." *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810, 823
5  (2018).  However, the plaintiff is not required to prove every element of
6  information qualifies as a trade secret "since trade secrets frequently contain
7  elements that by themselves may be in the public domain but together qualify as
8  trade secrets." *Boeing Co.*, 108 Wash. 2d at 50 (citations omitted).

9        One key factor courts consider in determining whether information has
10 "independent economic value" is the effort and expense that was used to develop
11 the information.  *Ed Nowogroski Ins., Inc.*, 137 Wash. 2d at 438; *see also Lyft, Inc.*
12 *v. City of Seattle*, 190 Wash. 2d 769, 782 (2018).  Courts also consider the "novelty
13 and uniqueness" of the information.  *McCallum v. Allstate Prop. & Cas. Ins. Co.*,
14 149 Wash. App. 412, 425 (2009) (quotations and citation omitted).  "To be novel,
15 the information must not be readily ascertainable from another source." *Inteum*
16 *Co., LLC v. Nat'l Univ. of Singapore*, 371 F. Supp. 3d 864, 877 (W.D. Wash.
17 2019) (quotations and citations omitted).  Through affidavits and declarations,
18 plaintiffs must provide "specific, concrete examples illustrating that the . . .
19 information meets the requirements for a trade secret." *Modumetal, Inc.*, 4 Wash.
20 App. 2d at 824 (quotation and citation omitted).  Finally, a plaintiff must also

establish that reasonable efforts have been taken to maintain or protect the secrecy of information at issue. *Id.* at 823.

Plaintiff asserts the following trade secrets: Plaintiff's customers and clients, pricing, methods, strategies, and techniques, all of which Plaintiff alleges are proprietary and confidential. ECF No. 27 at 13–14, ¶¶ 4.2.b, 4.3.b. Plaintiff asserts it has taken measures to prevent unauthorized disclosure or use of this information by establishing cybersecurity measures, requiring employees to keep information secret, and not disclosing most of the information especially as it pertains to client needs, pricing, worker availability, and contractual arrangements. *Id.*, ¶¶ 4.3.c, 4.2.c. Plaintiff asserts the individual Defendants willfully and maliciously misappropriated this information, taking the information in electronic and hard copy form, as well as memorization, and using the information individually and through Personna, its competing businesses. *Id.*, ¶¶ 4.3.d, 4.2.d. As a result of this conduct, Plaintiff alleges damages in the form of actual and threatened loss of business. *Id.*, ¶¶ 4.3.e, 4.2.e.

The Court finds the Amended Complaint states sufficient factual matter, accepted as true, to state a claim to relief for the federal and state trade secret claims that is plausible on its face. *Iqbal*, 556 U.S. at 678. Defendants' factual arguments and disputes are more appropriate for summary judgment or trial.

//

### C. Tortious Interference

Defendants move to dismiss Plaintiff's tortious interference claim on the grounds there are no allegations regarding the existence of, or damage, to any business expectancy. ECF No. 24 at 15.

In a tortious interference claim under Washington law, plaintiff must show "(1) the existence of a valid … business expectancy; (2) that defendants had knowledge of that [expectancy]; (3) an intentional interference inducing or causing a breach or termination of the … expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Life Designs Ranch, Inc. v. Sommer*, 191 Wash. App. 320, 337 (2015). The claims need specific evidentiary support; for example, in *Life Designs Ranch*, the court found the plaintiff's conclusory claim of harm to reputation lacked evidentiary support where "[n]o client, potential client, or referral source submitted an affidavit establishing they can no longer trust [plaintiff] or did not choose [plaintiff's] designs because of [defendant's] website." *Id.*

Plaintiff alleges Defendants intentionally interfered with Plaintiff's business by unfairly soliciting Plaintiff's clients, customers, and workers. ECF No. 27 at 27 at 15, ¶ 4.4.c. Specifically, Plaintiff alleges a business expectancy with Jewel Fruit that Defendants interfered with using Plaintiff's confidential information in an effort to undercut Plaintiff's asking price. *Id.*

actual

The Court finds the Amended Complaint states sufficient factual matter, accepted as true, to state a claim to relief for tortious interference with business expectancy that is plausible on its face. *Iqbal*, 556 U.S. at 678. Defendants' factual arguments and disputes are more appropriate for summary judgment or trial.

The Court declines to address Defendants' remaining arguments raised for the first time in the reply regarding additional claims asserted in the Amended Complaint. *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (ECF No. 24) is **denied**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED December 19, 2022.



THOMAS O. RICE
United States District Judge