1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| BARRETT BUSINESS SERVICES, INC., | NO. 1:22-CV-3122-TOR |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY |
| v. | |
| CHARLES COLMENERO and DENELL HOPKINS and the marital community comprised thereof; SANTIAGO ALEJO and FATIMA ALEJO, and the marital community comprised thereof, and REPSEL ASSOCIATES, INC., D/B/A PERSONNA EMPLOYER SERVICES, | |
| Defendants. | |

BEFORE THE COURT are Defendants' Motion for Summary Judgment (ECF No. 197) and Motion to Exclude Expert Report and Testimony of William Partin (ECF No. 202). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY ~ 1

1    informed.  For the reasons discussed below, Defendants' Motion for Summary

2    Judgment (ECF No. 197) is **GRANTED IN PART** and Motion to Exclude Expert

3    Report and Testimony of William Partin (ECF No. 202) is **GRANTED IN PART**.

4                                    **BACKGROUND**

5          A factual background of this case can be found in the Court's previous

6    summary judgment Order (ECF No. 141 at 2-3).  To summarize, Plaintiff Barrett

7    Business Services, Inc. ("BBSI") is a human resources management company that

8    contracts with small and medium-sized businesses to provide human resource

9    management solutions, including temporary staffing and professional services.  It

10   provides these services to employers throughout the Yakima area and particularly

11   to fruit growers and other agricultural companies.

12         On April 23, 2014, BBSI hired Defendant Charles Colmenero

13   ("Colmenero") as an area manager to start on May 12, 2014.  Colmenero quit

14   BBSI on July 12, 2022.  On July 17, 2015, BBSI hired Defendant Santiago Alejo

15   ("Alejo") as a Recruitment Specialist to start on July 27, 2015.  Alejo quit BBSI on

16   July 8, 2022.  Colmenero and Alejo set up their own business, Repsel Associates,

17   Inc., d/b/a/ Personna Employment Solutions (Personna).

18         Plaintiff brought this suit against Defendants alleging various claims

19   including violation of the Washington Uniform Trade Secrets Act ("UTSA") and

20   the Federal Defend Trade Secrets Act ("DTSA") through misappropriation of trade

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 2

secrets.  ECF No. 53.  Defendants also asserted several counterclaims against Plaintiff.  ECF No. 54.

On December 27, 2023, the Court granted Plaintiff's motion for partial summary judgment in part and granted Defendants' motion for summary judgment in part.  ECF No. 141.  The Court dismissed the bulk of Plaintiff's claims including the trade secret misappropriation claims on the basis that Plaintiff failed to demonstrate it had protectable trade secrets.  *See id.*  Plaintiff appealed the Court's decision and the Ninth Circuit reversed and remanded on the basis that "the district court erred in granting summary judgment on the trade secret misappropriation claims." *Barrett Bus. Servs., Inc. v. Colmenero*, No. 24-4474, 2025 WL 2048985, at *2 (9th Cir. July 22, 2025).  The Ninth Circuit found that genuine issues of fact existed as to whether Plaintiff's temporary-employee list and clients' pricing and needs constituted protectable trade secrets.  ECF No. 183 at 6.  Therefore, only Plaintiff's trade secrets claims as to these two issues remain on remand.

Defendants now move for summary judgment on Plaintiff's remaining claims and move again to exclude the expert report and testimony of William Partin.  ECF Nos. 197, 202.

## SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the

1   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling

2   on a motion for summary judgment, the court must only consider admissible

3   evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

4   The party moving for summary judgment bears the initial burden of showing the

5   absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

6   317, 323 (1986). The burden then shifts to the non-moving party to identify

7   specific facts showing there is a genuine issue of material fact. *See Anderson v.*

8   *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla

9   of evidence in support of the plaintiff's position will be insufficient; there must be

10  evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

11      For purposes of summary judgment, a fact is "material" if it might affect the

12  outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is

13  "genuine" only where the evidence is such that a reasonable jury could find in

14  favor of the non-moving party. *Id.* The Court views the facts, and all rational

15  inferences therefrom, in the light most favorable to the non-moving party. *Scott v.*

16  *Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted

17  "against a party who fails to make a showing sufficient to establish the existence of

18  an element essential to that party's case, and on which that party will bear the

19  burden of proof at trial." *Celotex*, 477 U.S. at 322.

20  //

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 4

# DISCUSSION

## A. Rule of Mandate

Plaintiff argues that the rule of mandate bars Defendants' motion for summary judgment.  ECF No. 205 at 4-8.

"The rule [of mandate] is that the mandate of an appeals court precludes the district court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal."  *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987).  "[A]lthough lower courts are obliged to execute the terms of a mandate, they are free as to 'anything not foreclosed by the mandate.'"  *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000) (quoting *Herrington v. Cnty of Sonoma*, 12 F.3d 904 (9th Cir. 1993)).  Thus, the Court's "ultimate task is to distinguish matters that have been decided on appeal and *are therefore beyond the jurisdiction of the lower court*, from matters that have not." *United States v. Perez*, 475 F.3d 1110, 1113 (9th Cir. 2007) (internal citations omitted) (emphasis in original).

To prevail on a misappropriation of trade secrets claim under the Washington Uniform Trade Secrets Act ("UTSA"), RCW 10.108.101 *et seq.*, or the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, a plaintiff must demonstrate that (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions caused or

1  threatened damage to the plaintiff.  *See Modumetal, Inc. v. Xtalic Corp.*, 4 Wash.

2  App. 2d 810, 823-24 (2018); *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,

3  149 F.4th 1081, 1087 (9th Cir. 2025); *see also* 18 U.S.C. §§ 1836(b)(1), 1839(3)-

4  (5).

5       The issue previously before the Court and subsequently the Ninth Circuit on

6  appeal was whether Plaintiff possessed a protectable trade secret.  Defendants'

7  prior summary judgment motion moved to dismiss Plaintiff's trade secrets claims

8  on the grounds that Plaintiff did not utilize trade secrets in its staffing business.

9  ECF No. 65 at 8-14.  This Court agreed that Plaintiff had failed to show that it had

10  protectable "trade secrets" as defined by the statutes and dismissed Plaintiff's

11  claims of misappropriation of trade secrets under state and federal law.  ECF No.

12  141 at 7.  On appeal, the Ninth Circuit concluded that Plaintiff raised a genuine

13  dispute as to whether the temporary-employee lists and client's pricing and needs

14  compilations constituted trade secrets and reversed the Court's decision.  ECF Nos.

15  183 at 2-6.  The Ninth Circuit did not explicitly or implicitly reach the issues of

16  misappropriation or damages which are both required elements of a

17  misappropriation of trade secrets claim.  ECF Nos. 183 at 2-6.  And contrary to

18  Plaintiff's assertion, the Ninth Circuit did not mandate Plaintiff's trade secrets

19  claims go to trial, only that a dispute of fact existed as to whether Plaintiff

20  possessed trade secrets.  *See id.*  Plaintiff's trade secret claim may still fail if there

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 6

is no genuine dispute as to the misappropriation and damages elements.  Ergo, the

Ninth Circuit's mandate does not preclude the Court from summarily considering

those matters on remand.

**B. Misappropriation**

Defendants contend Plaintiff cannot demonstrate that Defendants

misappropriated or unlawfully used any of the alleged trade secret compilations.

ECF No. 197 at 11.

The UTSA and DTSA define misappropriation in relevant part, as follows:

(A)  acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B)  disclosure or use of a trade secret of another without express or implied consent by a person who--

    (i)  used improper means to acquire knowledge of the trade secret;

    (ii)  at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--

        (I)  derived from or through a person who had used improper means to acquire the trade secret;

        (II)  acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

        (III)  derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

18 U.S.C. § 1839(5); RCW 19.108.010(2).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 7

Improper means includes "theft, bribery, misrepresentation, [or] breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6); RCW 19.108.010(1). Misappropriation may be proven by "circumstantial as well as direct evidence." *Brocade v. Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1215-1216 (N.D. Cal. 2012); *see also Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 824 (2018) ("Misappropriation of trade secrets can be notoriously difficult to prove: . . . 'In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.'" (quoting *Monovis, Inc. v. Aquino*, 905 F. Supp. 1205, 1231 (W.D.N.Y. 1994))).

In accordance with the Ninth Circuit's mandate, only Plaintiff's temporary-employee list and clients' pricing and needs list are at issue for Plaintiff's misappropriation of trade secrets claim. Moreover, as the Court is required to view all facts in the light most favorable to the non-movant on summary judgment, the Court analyzes the issue of misappropriation under the assumption both lists are found to be trade secrets.

### 1. Temporary-Employee List

Plaintiff's temporary-employee list is a "compilation of its temporary employees' information, including the employees' contact information, work

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY ~ 8

preferences, availability, and work abilities." *Barrett Bus. Servs., Inc. v.*

*Colmenero*, No. 24-4474, 2025 WL 2048985, at *4 (9th Cir. July 22, 2025).

Plaintiff asserts that Defendants memorized or wrote down the contact information

of worker contacts through their employment at BBSI which they then used to

solicit BBSI's clients. ECF No. 206 at ¶ 34. After reviewing the record, the Court

finds Plaintiff has not presented any evidence other than speculation that raises a

genuine dispute as to whether Defendants misappropriated Plaintiff's temporary-

employee list.

Plaintiff claims Defendants used its temporary-employee list to help solicit

BBSI's clients including AgroFresh, Inc. ("AgroFresh"), Jewel Apple ("Jewel"),

Roche Fruit ("Roche"), Yakima Fruit, and Price Apples ("Price"). During

AgroFresh's 30(b)(6) testimony, AgroFresh testified that it ordinarily sends a list

of positions needing to be filled to its staffing agencies and the list may include the

names of previous individuals that filled those roles and who they were recruited

by. ECF No. 93-5 at 5-6. AgroFresh's 30(b)(6) witness, Eric Lieberman

("Lieberman"), also testified in his personal capacity that such a list was sent to

Personna and BBSI. *Id.* at 6. AgroFresh further testified that several of its

temporary employees that were contracted with BBSI during the 2021 harvest

season returned for the 2022 harvest season contracted with Personna. ECF No.

64-2 at 28. However, any staffing agency that received AgroFresh's position list

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 9

1    would have known that those individuals had previously been contracted with

2    BBSI and could have attempted to recruit them.  Thus, even if a jury were to find

3    Plaintiff's temporary-employee list constituted a trade secret, there is no

4    misappropriation by Defendants where AgroFresh itself sent out the names of

5    temporary employees previously contracted with BBSI to its staffing agencies.

6        Plaintiff has not provided any other evidence giving rise to an issue of fact

7    as to whether Defendants misappropriated Plaintiff's temporary-employee list.

8    **2.  Client Pricing and Needs**

9        Defendants argue that Plaintiff has not produced any compilation of its

10   clients' pricing and needs that it created prior to this litigation nor evidence that

11   Defendants actually used any such compilation.  ECF No. 197 at 13-14.  As an

12   initial matter, whether Plaintiff has a compilation of its clients' pricing and needs

13   goes to the issue of whether Plaintiff owns a trade secret which is reserved for the

14   jury per the Ninth Circuit's mandate.  And viewing the evidence under the

15   assumption that such a compilation exists and is found to be a trade secret, the

16   Court finds Plaintiff has presented enough evidence to raise an issue of fact on the

17   issue of misappropriation.

18       "As a general rule, an employee who has not signed an agreement not to

19   compete is free, upon leaving employment, to engage in competitive employment."

20   *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 437 (1999).  However, the

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 10

former employee "remains under a duty not to use or disclose, to the detriment of the former employer, trade secrets acquired in the course of previous employment." *Id.* For example, "an employee may not use or disclose trade secrets belonging to the former employer to actively solicit customers from a confidential customer list." *Id.* at 450; *see also MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) ("[M]isappropriation occurs if information from a customer database is used to *solicit* customers." (emphasis in original)). Solicitation does not occur from informing a former employer's customers of a change of employment and that customer simply chooses to continue the relationship upon learning of the new employment. *MAI Sys.*, 991 F.2d at 521.

Where the trade secret is a compilation, use of the information from it piecemeal may still constitute a misappropriation. *See, e.g.*, *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 713 (W.D. Tex. 2025) ("The crux of Defendant's alleged scheme was to siphon information about Plaintiffs' many customers from the portal in which it was securely compiled. That they accomplished that siphoning bit by bit, rather than all at once, does not change the fact that Defendant gained a competitive advantage by gleaning a breadth of information that no one customer alone could have told them.").

Here, it is undisputed that Defendants were communicating with AgroFresh prior to Defendants departure from BBSI about onboarding AgroFresh with

Personna.  ECF Nos. 198 at ¶¶ 22-27, 62 at ¶¶ 44-48.  However, the nature of those communications are disputed.  Defendants assert that Alejo informed Julio Cruz ("Cruz"), the Regional Operations Manager for AgroFresh Solutions, Inc., that he intended to leave, and Cruz then asked Alejo if he would consider working with AgroFresh after his departure from BBSI.  ECF No. 198 at ¶¶ 22,23.  Defendants rely on a declaration submitted by Cruz back in 2022 where he states neither Colmenero nor Alejo solicited AgroFresh and only after Alejo had left BBSI did Cruz approach Alejo about getting information on Personna.  ECF No. 19 at ¶¶ 2-4.  However, Plaintiff has submitted contradicting testimony from AgroFresh's 30(b)(6) deposition that AgroFresh and Alejo held a meeting prior to Alejo's departure from BBSI at which Alejo informed AgroFresh of his desire to form Personna and inquired whether AgroFresh would work with Personna.  ECF No. 64-2 at 10-11.  AgroFresh told Alejo that it would not switch without a performance and cost advantage and, according to AgroFresh, Alejo "in principal" agreed both would be met.  *Id.* at 11-12.  AgroFresh's 30(b)(6) witness, Lieberman, further testified that he considered the meeting a pitch meeting:

> Q. Would you say this was a pitch meeting for Personna?
>
> A. In my personal opinion, I took that meeting -- that Santiago was going to tell us about his new company, tell us, you know the why -- why we should and things like that, and we were going to enumerate our paying points there.  So, yeah, I would call that a pitch -- he didn't call it specifically a pitch meeting, but I would -- most normal people would call it a pitch meeting.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY ~ 12

. . .

> So he was basically saying that he thought that he could provide a
> better service for AgroFresh as far as recruiting people . . . recruiting a
> number of people is always a difficult task, and he felt like he had the
> right connections and he was enumerating why he felt like he could do
> a good job doing that.

ECF No. 64-2 at 13.

Lieberman also testified that he believed Personna both "knew what BBSI was offering, and so it was more of what was Mr. Alejo and 'slash' Personna going to offer." *Id.* at 29.

Additionally, it is also undisputed that on March 25, 2022, Defendants provided Lone Oak Payroll with a "Personna Client List" that listed Price and AgroFresh as "initial clients" and Yakima Fruit & Cold Storage and Roche Fruit as "future clients" and that all of these businesses were clients of BBSI at that time. ECF No. 92 at ¶ 30. Defendants contend that the list was used for negotiation and that the businesses were not Personna clients at that time but rather "a rosy vision of who Personna's clients might be in the future . . . ." *Id.* This appears to be somewhat true as AgroFresh did not work with Personna until later that year in June. *See* ECF No. 206 at ¶¶ 38,39. However, taking Defendants' "rosy vision" as an indicator that Defendants knew at that time they intended to pursue those businesses as clients—and ultimately succeeding in doing so—combined with the fact that the list only contained clients that were at that time working with BBSI,

1   clients that Defendants had themselves worked with in their BBSI capacities and

2   whose contracts Defendants were familiar with, could lead a reasonable juror to

3   infer that Defendants used their knowledge of BBSI's confidential information to

4   solicit those businesses.

5        Plaintiff also presents testimony by Monica Caoile ("Caoile"), another BBSI

6   employee, that prior to Alejo and Colmenero's departure from BBSI, they

7   expressed interest in a client list Caoile had in her possession that she later found to

8   be missing after Alejo and Colmenero left BBSI.  ECF No. 64-1 at 95-98.  Caoile

9   testified that she had never talked about the list with any other BBSI employee

10   until she noticed it was missing.  *Id.* at 97.  This testimony adds to the largely

11   circumstantial evidence that, when viewed in the light most favorable to Plaintiff,

12   creates an issue of fact as to whether Defendants misappropriated Plaintiff's list of

13   its clients' pricings and needs.

14   **C. Damages and Defendant's Motion to Exclude Expert Testimony**

15        Defendants argue that Plaintiff cannot demonstrate that any

16   misappropriation resulted in damages to BBSI.  ECF No. 197 at 18.  Under the

17   UTSA and DTSA, a plaintiff may seek damages for the "actual loss caused by the

18   misappropriation of the trade secret."  18 U.S.C. § 1836(b)(3)(C); RCW

19   19.108.030(2).

20        Plaintiff has submitted under seal an expert report and declaration by

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 14

William Partin ("Partin") pertaining to Plaintiff's alleged damages.  ECF Nos. 82, 82-1.  Defendants have renewed their *Daubert* motion (ECF No. 73) to exclude Partin's testimony and report.  ECF No. 202.  The Court will therefore address Plaintiff's motion here.

## 1. Legal Standard

Admission of expert witness testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

In evaluating whether the proffered expert testimony will facilitate the trier of fact's understanding of the evidence or determination of a fact in issue under Rule 702, the Court assesses both the relevance and reliability of the testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-92 (1993).  The burden

rests with the proponent of the expert testimony to demonstrate by a preponderance of the evidence that the testimony is admissible. *See* Fed. R. Evid. 702 Advisory Committee Note (2023).

### 2. Analysis

Defendants do not challenge Partin's qualifications as an accountant but rather contend Partin's testimony is unreliable because it is based on false assumptions and conclusory methods and is now largely irrelevant due to the narrow issues left on remand. ECF Nos. 73 at 10-12, 202 at 3-4. Plaintiff counters that that both its misappropriation of trade secrets claims and tortious interference claims are viable upon remand. ECF No. 203 at 5. Plaintiff further argues that Partin's testimony is based on quantifiable losses and calculates damages for misappropriation of trade secrets using methodology approved by the Ninth Circuit. ECF Nos. 203 at 6, 81 at 9-11.

As the Court previously stated, the Ninth Circuit's mandate only reversed the Court's dismissal of Plaintiff's misappropriation of trade secrets claims, thus only those claims remain viable on remand. *Barrett Bus. Servs., Inc.*, 2025 WL 2048985, at *2. Partin's report calculated the estimated damages for misappropriation of trade secrets by assessing BBSI's estimated lost profits and disgorgement of Defendants' profits generated through the use of BBSI's trade secrets. Partin used the following methodology.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY ~ 16

1    Partin summarized all of Personna's invoices issued to its clients from July

2    2022 through August 2023.  Partin then identified nine of those clients invoiced as

3    having been clients of BBSI within one year prior to Defendants' end of

4    employment with BBSI and that were directly managed by Comenero and Alejo

5    while they were employed by BBSI.  Partin calculated the total revenues generated

6    by those nine clients for Personna over the thirteen-month period.  Based on

7    BBSI's allegations that it would have realized this revenue but for Defendants'

8    misappropriation, Partin then calculated the lost profit on that revenue using

9    BBSI's average actual contribution to profit and overhead it realized from its

10   Yakima branch customers from January 1, 2021 through July 31, 2022.  The

11   resulting number, $801,840, was the estimated lost contribution to BBSI's profit

12   and overhead from July 2022 to August 2023.

13   Partin also compared BBSI's contribution margins realized for its Yakima,

14   Moses Lake, and Hermiston branches from January 1, 2021 through July 31, 2022,

15   prior to Defendants leaving BBSI, to those contribution margins realized for the

16   same branches August 1, 2022 through September 30, 2023, after Defendants left

17   BBSI.  Partin found that BBSI incurred a decline in gross revenue and contribution

18   margins for the year after Defendants left BBSI and attributed the total lost

19   contribution margin to Defendants' misappropriation which totaled $1,254,960.

20   Finally, Partin calculated the total estimated lost contribution to BBSI's

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 17

profit and overhead for the next ten years, based on anticipated BBSI testimony that the average customer retention is approximately ten years, by combining the $801,840 allegedly already realized the first year with the $1,254,960 that BBSI would have realized each year for the next nine years but for Defendants' misappropriation.  The total, $12,096,480, was then adjusted to reflect a present-day value total of $7,380,864.  Partin included all the data he pulled his numbers from and his calculations in the report.

A plaintiff may recover loss profits if those damages can be calculated with reasonable certainty that is not based on mere speculation or conjecture.  *Eagle Group, Inc. v. Pullen*, 114 Wash. App. 409, 418 (2002).  Lost profit damages "must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some definite standard, such as market value, established experience, or direct inference from known circumstances." *Gaasland Co., Inc. v. Hyak Lumber & Millwork, Inc.,* 42 Wn.2d 705, 713, 257 P.2d 784 (1953).

To the extent Partin's testimony contains legal conclusions, those must be excluded.  *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("[A]n expert cannot testify to a matter of law amounting to a legal conclusion.").  However, the Court finds Partin's methodology behind his first calculation of BBSI's estimated damages from the actual revenue realized by Personna over the

fourteen-month period from nine previous clients of BBSI that were directly managed by Defendants to be sufficiently reliable to avoid exclusion. *Mason v. Sybron Corp.*, 955 F.2d 48 (9th Cir. 1992) (""[D]isgorgement is the basic remedy for trade secret misappropriation."). Defendants will have an opportunity to challenge the credibility of Partin's testimony on cross-examination.

Partin's testimony as to calculated future loss profits based on the decline in revenue across BBSI's geographically adjacent branches in the year after Defendants' departure from BBSI is however too speculative. Partin was told by BBSI to assume that the decline in revenue across all branches was a result of Defendants' misappropriation of trade secrets. But that assumption was based on BBSI's argument, prior to the Ninth Circuit's mandate, that the trade secrets misappropriated included "BBSI's human resources management concept, knowledge of its financial characteristics, marketing methods, staffing, pricing, customers lists, labor sourcing and other intellectual property." ECF No. 82 at 12. Now that the Court has dismissed Plaintiff's trade secret claim as to its temporary-employee list, BBSI's list of its clients' pricing and needs is the only remaining possible trade secret misappropriation claim that is at issue in this case. As such, Partin's damages calculations stemming from BBSI's lost revenue is overly broad.

First, Partin's calculations of lost revenue from 2022 to 2023 include many customers that contributed no revenue to BBSI from August 2022 through

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY ~ 19

1    September 2023 but nor were they invoiced by Personna between July 2022 and

2    August 2023.  Additionally, there does not appear to be any distinction between

3    those clients that had been directly managed by Defendants and those that were

4    not.  Thus, Partin's damages calculation based on an assumption that *all* of BBSI's

5    loss in revenue across all three branches between 2022 and 2023, a total of

6    $1,254,960, was attributed to Defendants' misappropriation of BBSI's clients'

7    pricing and needs is not calculated with reasonable certainty.  *See, e.g.*,

8    *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1301 (S.D. Cal. 2018)

9    (damages expert compared the plaintiff's historical sales and profits before and

10   after the infringement and calculated lost profits attributable to infringement).

11   Therefore, by extension, Partin's assumption that that $1,254,960 loss in revenue

12   would have been realized each year for nine years thereafter if not for Defendants'

13   misappropriation was also not calculated with reasonable certainty and must be

14   excluded.  Defendants' motion to exclude Partin's testimony and report is **granted**

15   **in part**.

16        For these reasons, the Court also finds that Partin's report sufficiently raises

17   an issue of fact as to the damages element of Plaintiff's misappropriation claim.

18        **D. Attorney Fees**

19        Defendants move for attorney fees pursuant to RCW 19.108.040 and 18

20   U.S.C.A. § 1836(b)(3)(D) which permit an award of attorney fees where a claim of

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 20

misappropriation is made in bad faith.  As Plaintiff has presented sufficient evidence to defeat summary judgment on part of its claim, the Court does not find Plaintiff has demonstrated bad faith.  Defendants' request is denied.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendants' Motion for Summary Judgment (ECF No. 197) is **GRANTED IN PART**.

2.  Defendants' Motion to Exclude Expert Report and Testimony of William Partin (ECF No. 202) is **GRANTED IN PART**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED February 5, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 21